UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES J. MACKENZIE,

    Plaintiff,

*v*.                                                      CASE NO. 07-CV-13560

COMMISSIONER OF                 DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,                    MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

### I.     **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 9, 14.)

Plaintiff was 47 years of age at the time of the most recent administrative hearing. (Tr. at 21, 259.) Plaintiff's relevant employment history included work as a microfiche duplicator and deliverer for five years. (Tr. at 81-82, 106-07.) Prior to that, Plaintiff worked as a computer operator. (Tr. at 106.)

Plaintiff filed the instant claim on January 22, 2004, alleging that he became unable to work on May 28, 2003. (Tr. at 51, 108.) The claim was denied initially and upon reconsideration. (Tr. at 43.) In denying Plaintiff's claim, the Defendant Commissioner considered chronic obstructive pulmonary disease ("COPD"), fractured heel and bones in left foot, and back problems as possible bases of disability. (*Id.*)

On January 4, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Joel G. Fina, who considered the case *de novo*. In a decision dated February 16, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 18-29.) Plaintiff requested a review of this decision on March 30, 2007. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner when, on August 3, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) *See Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On August 24, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of*

*Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). *Accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.) Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. § 416.920(a)(4)(v), (g).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment for his low back and left lower extremity pain with Dr. Copeland, a neurosurgeon. (Tr. at 252.) Plaintiff began suffering from low back and leg discomfort after he fell from a loading dock onto his back on November 22, 2002. (Tr. at 250,124.) Dr. Copeland provided a surgical assessment but declined intervention and referred Plaintiff to Timothy Grover, M.D., of the Pain Management Center in Bay City, Michigan. (Tr. at 252.) Dr. Grover noted the presence of disc herniations at the L3-4 left side and L4-5 left lateral and also noted an L5-S1 right disc protrusion. (Tr. at 249.)

Dr. Grover recommended physical therapy and gave Plaintiff an "intralumbar epidural injection . . . under fluoroscopic guidance using aseptic technique." (*Id.*) The pain treatments and physical therapy continued through May 2005, at which time Dr. Grover concluded that physical therapy had "plateaued," Plaintiff was not a "surgical candidate," and that the pain-relieving injections would continue "every eight weeks to obtain long lasting relief." (Tr. at 237.)

In May 2003, after Plaintiff fell approximately four feet from a deck, he underwent a CT scan of his left foot which revealed a "comminuted fracture involving the calcaneus which extends into the surface of the talus," although "[t]he talus itself does not appear to be fractured." (Tr. at 180.) Dr. Kaliszewski treated Plaintiff's fracture by placing him in a short-leg, non-weight-bearing cast and prescribing pain medication. (Tr. at 178.) In June 2003, Plaintiff's heel was operated on and an orthopedic plate with multiple screws stabilizing the fracture was placed in his heel. (Tr.

7

at 174, 140, 132.) Plaintiff recovered well from the surgery by all objective measures, but was still complaining of pain. (Tr. at 150-75.) Dr. Kaliszewski remarked in October of 2003, that "we really need to try to cut back on this pain med if we can . . . [h]opefully the PT will help in this matter." (Tr. at 155.) Physical therapy evaluation and treatment was ordered for Plaintiff by Dr. Kaliszewski and later at the request of Dr. Diana Ennes from late October of 2003 through April of 2004. (Tr. at 153, 145, 136-39, 182-84.)

In January 2004, Dr. Ennes indicated that Plaintiff was unable to work because of a "permanent disability from standing walking job," based on the fact that Plaintiff could not stand longer than 15 minutes without pain. (Tr. at 148-49.)

In March 2004, five views of the lumbar spine were taken which showed "no fracture or subluxation . . . no significant narrowing of the intervertebral spaces . . . [and] a small spina bifida of the S1." (Tr. at 147.) In October 2004, Plaintiff underwent an EMG which showed the left peroneal and tibial compound muscle action to be "diminished" but all other areas were within normal limits. (Tr. at 235.) In February 2006, an MRI was taken of Plaintiff's lumbar spine as part of an independent examination for the Michigan Millers Insurance Company, which showed L3-L4 and L4-L5 "mild facet degenerative changes" that were "without significant change from the previous exam" done in December 2004. (Tr. at 233, 230-34.) Plaintiff also underwent a discography performed by Dr. Joel Schechet which revealed results consistent with degenerative disc disease at the L3-4, L4-5, and L5-S1 levels. (Tr. at 225; 223-26.) Plaintiff was also referred, by his insurance company, to Dr. Paul LaClair of Michigan Spine Care who prescribed stronger pain medication. (Tr. at 217-22.) Plaintiff continued to be seen by Kari Pagano, M.D., at Covenant Health Care for pain management. (Tr. 207-14.) Dr. Bielawski stated that "this is his most significant disability which limits him from walking on heels and toes today and squatting

down, [h]is range of motion was diminished and strength was diminished." (*Id.*) Dr. Bielawski concluded that Plaintiff cannot "walk long distances, squat down to pick up objects or climb stairs because of the ankle injury." (*Id.*) As to low back pain, Dr. Bielawksi "did not find any evidence of a herniated disc." (Tr. at 191.)

In May 2002, Plaintiff visited the emergency room complaining breathing difficulties. He was diagnosed with chronic obstructive pulmonary disease (COPD). (Tr. at 117-23.) Two consultative examinations were performed at the request of the Disability Determination Service by Brett Bielawski, D.O., on July 3 and August 21 of 2004. (Tr. at 188-97.) In July 2004, Dr. Bielawski concluded that, as to Plaintiff's COPD, there "were diminished breath sounds bilaterally but no use of accessory muscles," "no cyanosis, clubbing, or edema," and that Plaintiff "was not dyspneic performing the musculoskeletal tasks." (Tr. at 190.) In August 2004, Dr. Bielawski reconsidered Plaintiff's COPD and after performing a number of tests concluded that "there is increased A-P diameter with prolongation of the expiratory phase, bilateral wheezing and rhonchi" and stated that Plaintiff was "notably dyspneic after ambulating around the office approximately 25 yards." (Tr. at 195.) In addition, he summarized that the pulmonary function studies "reveal severe obstructive ventilatory defect with no reversibility consistent with emphysema." (*Id.*)

A residual function capacity ("RFC") assessment performed on Plaintiff by a DDS physician (Dr. Bartone) in September of 2004 concluded that Plaintiff is able to lift 20 pounds occasionally, frequently lift 10 pounds, stand and/or walk for at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and is limited in his lower extremities to occasionally pushing and pulling. (Tr. at 199.) The DDS physician also concluded that Plaintiff has occasional postural limitations but cannot climb stairs or be on scaffolds and should also avoid

heights. (Tr. at 200-01.) The DDS physician also notes that in January 2004, Dr. Ennes noted that Plaintiff "is permanently disabled from a standing walking job." (Tr. at 204.)

   **E.     ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since May 28, 2003, and that Plaintiff meets the insured status requirements through March 31, 2008. (Tr. at 23.) At step two, the ALJ found that Plaintiff's "chronic obstructive pulmonary disease, status post fracture of the left heel with calcaneal internal fixation and lumbar degenerative disc disease" were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work as a duplicator/deliverer. (Tr. at 27.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs, such as assembler and inspector, available in the national and regional economy, i.e., the lower peninsula of Michigan. (Tr. at 28.) The ALJ also found the VE's testimony consistent with information contained in the Dictionary of Occupational Titles. (*Id.*)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. at 23-27), and he thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

## F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 23.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Although Plaintiff continued to complain of pain in his left heel, which had been fractured, corrective surgery had been performed successfully and all objective measures indicated the heel

was remedied. (Tr. at 174, 140, 132, 150-75.) Dr. Kaliszewski's remark that "we really need to try to cut back on this pain med if we can" is telling, I suggest, as it reveals even he believed the pain medication was in excess of the need for pain management. (Tr. at 155.) In addition, the consultative physician noted that the heel condition "limits him from walking on heels and toes today and squatting down . . . [and that he cannot] walk long distances, squat down to pick up objects or climb stairs because of the ankle injury." (Tr. at 190.) These findings are consistent with Plaintiff's treating physician's conclusion that Plaintiff is unable to return to his previous work or any other "standing walking job" and was also expressed by the DDS physician who performed the residual functional capacity assessment. (Tr. at 148-49, 204.)

I further suggest that medical evidence regarding the severity of Plaintiff's degenerative disc disease was not in line with the severity of Plaintiff's subjective pain. The condition was such that Dr. Copeland "declined intervention," i.e., would not perform corrective surgery. (Tr. at 252.) Although Dr. Grover found disc herniations (Tr. at 249) and provided physical therapy and pain medication injections to Plaintiff, by May of 2005, he concluded that physical therapy had "plateaued," and also agreed that Plaintiff's condition did not warrant surgery. (Tr. at 237.) Although Plaintiff continued to receive pain medication, tests performed in March and October of 2004, as well as February of 2006, did not show any significant fracture, subluxation, or narrowing of the spine and revealed only L3-L4 and L4-L5 "mild facet degenerative changes" that were "without significant change from the previous exam" done in December 2004. (Tr. at 207-14, 147, 235, 233, 230-34, 225, 223-26.) The consultative physician "did not find any evidence of a herniated disc." (Tr. at 191.)

As to Plaintiff's COPD, there is no medical evidence contradicting the consultative physician's most recent findings, relied upon by the ALJ, that "there is increased A-P diameter

with prolongation of the expiratory phase, bilateral wheezing and rhonchi," and stated that Plaintiff was "notably dyspneic after ambulating around the office approximately 25 yards" and that Plaintiff suffers from "severe obstructive ventilatory defect with no reversibility consistent with emphysema." (Tr. at 195, 26.) These limitations were taken into consideration by the DDS physician in performing the residual functional capacity assessment and the ALJ when fashioning hypothetical questions to the Vocational Expert. (Tr. at 200-01, 204, 282-284.)

I thus suggest that the ALJ's findings follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians, as well as the daily activities described by Plaintiff himself, i.e., that he drives, is able to cook light meals (although he does not need to because his wife does the cooking), reads, handles his financial details, uses a computer, watches television for many hours, meets his physician's appointments, attends physical therapy and occasionally shops. (Tr. at 27, 223, 91-94.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."

*Jones*, 336 F.3d at 476. On this record, I suggest that the ALJ properly included all the limitations supported by medical evidence and properly chose not to include Plaintiff's own subjective conclusions as to the degree of pain he endures or the subjective conclusion that he is unable to do any work at all.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                         s/ *Charles E Binder*
                                       CHARLES E. BINDER
Dated: May 21, 2008                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, Kenneth Laritz, and the Commissioner of Social Security, and served on U.S. District Judge Zatkoff in the traditional manner.

Date: May 21, 2008                 By     s/Patricia T. Morris
                                             Law Clerk to Magistrate Judge Binder